# IN THE COURT OF APPEALS OF IOWA

No. 25-1041
Filed September 4, 2025

**IN THE INTEREST OF J.Q. and W.Q.,**
**Minor Children,**

**J.B., Mother,**
        Appellant.
_____

Appeal from the Iowa District Court for Buena Vista County, Kristal L. Phillips, Judge.

The mother appeals the termination of her parental rights to her two children. **AFFIRMED.**

Alexandria Celli Smith of Sandy Law Firm, Spirit Lake, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Tisha Halverson, Paullina, attorney and guardian ad litem for minor children.

Considered without oral argument by Tabor, C.J., and Greer and Buller, JJ. Sandy, J., takes no part.

**GREER, Judge.**

The juvenile court terminated the mother's parental rights to both J.Q. (born in 2023) and W.Q. (born in 2024) pursuant to Iowa Code section 232.116(1)(h) and (*l*) (2025).[1] The mother appeals, arguing (1) the State did not prove the statutory grounds for termination and (2) because termination is not in the children's best interests, the juvenile court should have established a guardianship in the paternal grandparents instead of terminating the mother's parental rights.[2]

We review termination proceedings de novo. *A.B.*, 815 N.W.2d at 773. We are not bound by the factual findings of the juvenile court, but we do give them weight—especially when assessing witness credibility. *Id.* "Our primary concern is the best interests of the child[ren]." *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006).

**Statutory Ground.** When the juvenile court terminates parental rights on more than one ground, we may affirm if we find any one of the grounds supported by clear and convincing evidence. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

---

[1] The father's parental rights were also terminated; he does not appeal.

[2] In various sections of her petition on appeal, the mother mentions that she should have been given additional time to work toward reunification. The mother did not ask the juvenile court to award her additional time, and, accordingly, the juvenile court did not address whether section 232.104(2)(b) applied. *See* Iowa Code §§ 232.104(2)(b) (providing the court the option to continue placement of a child for an additional six months if the court finds "the need for removal . . . will no longer exist at the end of the additional six-month period"); .117(5) (permitting the court to deny termination and enter a permanency order under section 232.104). Because this issue was not raised to and decided by the juvenile court, we do not consider it. *See In re E.V.-C.*, No. 24-1808, 2025 WL 401959, at *2–3 (Iowa Ct. App. Feb. 5, 2025) (recognizing *In re J.R.*, 20 N.W.3d 839, 842 (Iowa Ct. App. 2025) allows a parent to challenge the sufficiency of the evidence as to the statutory grounds for the first time on appeal but refusing to consider the unpreserved issue of a request for more time to work toward reunification); *see also In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012) ("[T]he general rule that appellate arguments must first be raised in the trial court applies to [child-in-need-of-assistance] and termination of parental rights cases.").

Here, we focus on the elements of paragraph (h), which allows the court to terminate when:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

Iowa Code § 232.116(1)(h). The mother does not dispute the first three elements have been proved. She contests the fourth element, claiming the children could have been returned to her custody at the time of the termination trial. *See id.* § 232.116(1)(h)(4); *D.W.*, 791 N.W.2d at 707 (defining "at the present time" as "at the time of the termination hearing").

The family came to the attention of the Iowa Department of Health and Human Services (HHS) in October 2023—when J.Q. was approximately four months old and W.Q. was not yet born—after J.Q. experienced a significant drop in growth rate; the parents had repeatedly failed to take him to scheduled medical appointments. J.Q. was removed from parental custody and, upon his removal, tested positive for methamphetamine and amphetamines. The mother denied using methamphetamine in the prior year, but there were behavioral indicators that suggested she was using the drug and, in both December 2023 and January 2024, she tested positive for both methamphetamine and amphetamines.

The mother initially showed positive progress; she participated in a ninety-day residential substance-use program from January to April before transitioning

to a halfway house, where she remained until June. It was during this period of sobriety that W.Q. was born, and the child remained in the mother's custody until she relapsed in June (just a few weeks after leaving the halfway house).[3] The mother continued to use drugs following the June relapse—on August 28, she self-reported that she had used methamphetamine within the past week. On September 9, the mother attended a group session as part of outpatient substance-use treatment; the provider noticed the mother's hands had broken out, which the mother had previously reported occurred when she uses fentanyl due to being allergic to the drug. The mother showed behavioral indicators of use throughout the month of December, although a hair test completed on December 30 was negative for all tested substances. And in March 2025, the mother participated in a substance-use evaluation to re-enter treatment; she submitted to drug testing, which came back positive for methamphetamine—the mother admitted using the prior day. The termination trial took place on May 9. At the trial, the mother admitted that she had used methamphetamine four days earlier.

While the mother argues on appeal that the children could have been returned to her custody, we conclude she likely waived her challenge to this element by testifying at the termination trial that the children could not yet be safely returned. *See In re D.C.*, No. 24-1792, 2025 WL 401965, at *4 (Iowa Ct. App. Feb. 5, 2025) ("[W]hether categorized as waiver, forfeiture, estoppel, informal

---

[3] J.Q. was placed with the mother for a trial period during this same time; he was removed from the mother's care following her relapse.

judicial admission, or something else, we conclude a trial concession on the only element contested on appeal leads us to summarily reject the claim.").

But even absent waiver, we would conclude there is clear and convincing evidence to support termination under section 232.116(1)(h). Children need safe and sober caretakers, and the mother's use of methamphetamine continued up through the week of the termination trial. *See, e.g.*, *In re J.C.*, No. 24-1010, 2024 WL 5153928, at *2 (Iowa Ct. App. Dec. 18, 2024) (concluding the parent's "few months of sobriety is not enough to establish the children could be safely returned to his custody"); *In re E.M.*, No. 16-1641, 2016 WL 6903519, at *2 (Iowa Ct. App. Nov. 23, 2016) (concluding three months of sobriety is not enough for custody to be returned). The State proved the children could not be returned to the mother's custody at the time of the termination trial. *See In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016) ("A child cannot be returned to the custody of the child's parent under section 232.102 if by doing so the child would be exposed to any harm amounting to a new child in need of assistance adjudication." (cleaned up)); *In re A.B.*, 815 N.W.2d 764, 776 (Iowa 2012) ("We have long recognized that an unresolved, severe, and chronic drug addiction can render a parent unfit to raise children.").

**Guardianship.** Next, the mother argues that because termination of her parental rights is not in the children's best interests, the juvenile court should have established a guardianship with the paternal grandparents in lieu of termination. In support of her argument, the mother claims the termination of her rights would be detrimental to the children because of the close parent-child relationships. *See* Iowa Code § 232.116(3)(c). At the termination trial, HHS argued against

guardianship and for a more permanent family structure for the children, especially given their young ages.

The court is authorized to establish guardianship in lieu of termination following a termination hearing. *Id.* § 232.117(5) (allowing the court to avoid termination and enter an order in accordance with section 232.104). Among other things, the court must conclude that "termination of the parent-child relationship would not be in the best interest of the child[ren]." *Id.* § 232.104(4)(a). "And, practically speaking, there must be a named individual who is willing to serve as guardian." *In re M.H.*, No. 25-0398, 2025 WL 1453345, at *2 (Iowa Ct. App. May 21, 2025) (citing *In re M.H.*, 12 N.W.3d 159, 162–63 (Iowa Ct. App. 2024)).

Here, we question whether a guardianship with the paternal grandparents is even an option. While the children are placed with the paternal grandparents, the evidence at trial was that the grandparents wanted to adopt the children—it is not clear they were willing to serve as guardians. *Cf. M.H.*, 12 N.W.3d at 163 ("Without . . . evidence supporting the choice of a particular person, we cannot review the factors that are usually considered when determining whether a guardianship is appropriate in this case."). Even if we assume the grandparents would take on the role, we agree with the juvenile court "that this is not the case for a guardianship." Termination of the mother's parental rights and adoption by the grandparents is in J.Q.'s and W.Q.'s best interests. *See In re L.A.*, 20 N.W.3d 529, 533 (Iowa Ct. App. 2025) ("[A] guardianship is not legally preferred to termination."). It will provide the children with greater stability and—like the juvenile court concluded—allow the grandparents "to establish appropriate boundaries regarding contact for both [the father] and [the mother] if they believe

it to be in the children's best interest without fear of a change or termination of the guardianship." *See In re A.C.*, No. 23-0567, 2023 WL 3612382, at *2 (Iowa Ct. App. May 24, 2023) ("The impermanent nature of guardianships denies children the security and stability that a permanent home provides."); *L.A.*, 20 N.W.3d at 533 (recognizing it is disfavored to use a long-term guardianship for a very young child rather than termination and adoption).

The mother waived her challenge to the statutory ground. Even absent waiver, clear and convincing evidence supports termination under section 232.116(1)(h). And termination is in the best interests of the children. So, we affirm the termination of the mother's parental rights to J.Q. and W.Q.

**AFFIRMED.**